UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x

DERRICK BONILLA, a/k/a: "Daniel Marin"

                Petitioner,                NOT FOR PUBLICATION
                                                            **MEMORANDUM & ORDER**
          – against –                     04-CV-4860 (CBA)

RAYMOND J. CUNNINGHAM
Facility's Superintendent, ATTORNEY
GENERAL OF NEW YORK,

                Respondent(s).

------------------------------------------------------------x
AMON, United States District Judge.

      Before the Court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 by Derrick Bonilla, acting *pro se*. For the reasons stated below, the petition is denied.

**I.     Background**

      After a jury trial, Bonilla was convicted on June 3, 1999 of three counts of sexual abuse in the first degree under N.Y. Penal Law § 130.65[1]. Count one related to the touching of the vagina, count two related to the touching of the buttocks, and count three related to the touching of the breasts. Bonilla was also convicted of one count of bail-jumping in the second degree, under N.Y. Penal Law § 215.56. Bonilla was sentenced to a term of imprisonment consisting of one term of 2 1/3 to 7 years, two terms of 1 to 3 years, and one term of 1 1/3 to 4 years, all of which were to run consecutively, for an aggregate sentence of 5 2/3 to 17 years.

      **A.     Facts elicited at trial**

      The evidence presented at trial established that on May 24, 1995, at about 11:00 p.m., Bonilla followed a young woman, Gina Portella, into the vestibule of her home in the

brownstone at 218 Garfield Place in Brooklyn. (Tr. at 41-47 (Portella).) Ms. Portella testified that as she entered the vestibule of her building, Bonilla pushed his way into the vestibule behind her, grabbed her in a "bear-hug," and then put his hands on her buttocks, vagina, and breasts. Ms. Portella also testified that she screamed loudly and that Bonilla fled down the steps and down the street. (Tr. at 52-54 (Portella).)

Ms. Portella's testimony was corroborated by testimony of Vanessa Falgoust, who testified that she saw Bonilla and a woman struggling in the vestibule of the building, saw that Bonilla was overpowering the woman, and observed him flee down the stairs and down the street. (Tr. at 86-88, 93, 97-98, 103 (Falgoust).) Another witness, Alicia Fagan, testified that she heard Ms. Portella's screams and saw Bonilla fleeing the building. (Tr. at 173-74, 180-81 (Fagan).) Police Officer Kafka testified that pedestrians flagged him down on Seventh Avenue and reported an assault in progress on the next block. (Tr. at 90-91 (Falgoust); 108, 117, 126-27 (Kafka); 177 (Fagan).) Officer Kafka testified that he turned down that block and saw Bonilla running down Garfield Place and on to Fiske, where the police stopped him. (Tr. at 108-09, 117-18, 126-27 (Kafka).) Officer Kafka also testified that Bonilla was identified by various people on the scene. (Tr. at 110, 114, 120, 128-29 (Kafka).) Finally, Detective Borelli testified that Bonilla subsequently admitted that he had touched Ms. Portella's buttocks and had done similar things eight or so other times. (Tr. at 195 (Borelli).)

Testimony at trial also established that Bonilla was released on bail during the pendency of the case, but that he failed to appear in court on two scheduled dates. Bonilla was later arrested and returned to court. During his second arrest, Bonilla provided information, including name, date of birth, country of origin, and social security number, that was different from the

information he had provided after the first arrest. (Tr. at 253-55 (Pezella); 228-30 (McKeon); 258-59 (Hamm).)

### B. Post-conviction proceedings

Bonilla appealed his conviction to the New York Appellate Division, Second Judicial Department ("Appellate Division"). The brief filed by his appellate attorney claimed that the trial court erred in refusing Bonilla's request to charge the lesser crimes of third degree and attempted first degree sexual abuse and in imposing consecutive sentences for the sexual abuse charges. Bonilla also filed a supplemental pro se brief, with the permission of the Appellate Division, in which he claimed that his guilt of sexual abuse in the first degree was not proven by legally sufficient evidence and the verdict was against the weight of the evidence, that he was denied a fair trial by various errors evincing bias on the part of the court, that Ms. Falgoust's identification testimony was improperly admitted because the State did not give the defense adequate notice of that information, and that he did not receive effective assistance of counsel.

The Appellate Division modified in part and affirmed in part Bonilla's conviction. The Appellate Division modified Bonilla's sentence so that his term of imprisonment for the first court of sexual abuse would run concurrently with his term of imprisonment for the second count of sexual abuse. The Appellate Division affirmed the sentence in all other respects, found that the conviction was supported by legally sufficient evidence, and rejected as meritless all the remaining claims, including those in the supplemental brief. People v. Bonilla, 736 N.Y.S.2d 105 (N.Y. App. Div. 2002). Bonilla was denied leave to appeal the Appellate Division's order by the New York Court of Appeals. People v. Bonilla, 746 N.Y.S. 462 (N.Y. 2002).

Subsequently, on November 5, 2003, Bonilla filed a *pro se* motion to vacate his

conviction, pursuant to N.Y. Crim. Proc. Law § 440.10. Bonilla claimed that the testimony of Ms. Falgoust was "fraudulent," because her testimony at trial conflicted with her prior statements to police. The trial court found that the claim was procedurally barred either because it was explicitly decided on direct appeal or if not because it was based upon matters appearing on the record and not raised on direct appeal. Bonilla's application for leave to appeal this decision to the Appellate Division was denied.

On April 7, 2004, Bonilla once again filed a section 440.10 motion to vacate his conviction, claiming that he was denied a fair trial by the alleged bias of the court. Once again, the trial court found that Bonilla's claims were procedurally barred either because they were decided on direct appeal, or because they were based on matters appearing in the record which Bonilla had failed to raise on direct appeal. Again, Bonilla's application for leave to appeal to the Appellate Division was denied.

**II.     Discussion**

In his habeas petition, filed November 3, 2004, Bonilla asserts five grounds for relief. First, he claims that the trial court erred in admitting the testimony of Ms. Falgoust, which was allegedly "fraudulent" as it was inconsistent with her prior statements to police. Second, he claims that he was deprived of a fair trial by the alleged bias of the trial court, evidenced in part by the judge's questioning of the witnesses in a prejudicial manner. Third, he claims that he was deprived of effective assistance of counsel at trial, as Bonilla's counsel "failed to detect that the prosecution tampered with the testimonial evidence given by its witnesses" and "failed to impeach those witnesses." Fourth, he claims that the court erred in failing to charge the jury with the lesser included offenses of third degree and attempted first degree sexual abuse.

4

Finally, he claims that the court erred in imposing consecutive sentences for Bonilla's sexual abuse charges, as the "alleged unlawful touching occurred in a single act of brief duration." For the following reasons, each of Bonilla's claims fails.

### A. The "fraudulent testimony" claims

#### 1. Bonilla's argument is procedurally barred

Bonilla's first grounds for relief is that Ms. Falgoust's testimony was "fraudulent." Bonilla appears to be arguing that Ms. Falgoust perjured herself. However, such a claim is procedurally barred. Under New York state law, any claim that is based upon the record must be presented on direct appeal. Section 440.10 of New York Criminal Procedure Law allows a petitioner to collaterally attack a judgment that is in violation of his constitutional rights. However, subsection 440.10(2)(c) mandates that the state court deny any 440.10 motion where the defendant unjustifiably failed to argue such constitutional violation on direct appeal despite a sufficient record. See Reyes v. Keane, 118 F.3d 136, 139 (2d. Cir. 1997). Furthermore, "[f]ederal habeas courts generally may not review a state court's denial of a state prisoner's federal constitutional claim if the state court's decision rests on a state procedural default that is independent of the federal question and adequate to support the prisoner's continued custody." Epps v. Commissioner, 13 F.3d 615, 617 (2d Cir. 1994) (citing Coleman v. Thompson, 501 U.S. 722 (1991)), cert. denied, 511 U.S. 1023 (1994). Absent a showing of cause and prejudice, or a fundamental miscarriage of justice, such an argument cannot form the basis of a habeas petition. Gray v. Netherland, 518 U.S. 152, 161-62 (1996).

In this case, Bonilla did not argue in his direct appeal that Ms. Falgoust's testimony was "fraudulent." Bonilla raised the "fraudulent testimony" argument in a subsequent motion to

5

vacate his conviction pursuant to section 440.10. However, the trial court held that an argument that Ms. Falgoust's testimony was fraudulent was procedurally barred, as "the underlying facts appear in the record, thereby providing a sufficient basis for the defendant to have raised his claim" on appeal.[1] People v. Bonilla, Ind. No. 6468/95 (N.Y. Sup. Ct. Dec. 9, 2003), slip op. at 2. Thus, to the extent that Bonilla is arguing that Ms. Falgoust perjured herself, such an argument is procedurally barred, and Bonilla has not shown cause and prejudice or a fundamental miscarriage of justice.

### 2. Bonilla's argument fails on the merits

Furthermore, Bonilla's "fraudulent testimony" argument fails on the merits. First of all, Bonilla has not made a showing that Ms. Falgoust perjured herself. Bonilla simply points to alleged inconsistencies between her testimony at trial and her statement to the police, as it was recounted by Officer Kafka in a suppression hearing. These inconsistencies may be explained by the fact that Officer Kafka admitted that he had not taken detailed notes at the scene because he was "moving fast." (Tr. at 29 (Kafka).) Furthermore, any inconsistences simply raised questions regarding Ms. Falgoust's credibility and did not establish that she perjured herself.

Finally, even if Bonilla had shown that Ms. Falgoust's testimony was "fraudulent," it is not clear what constitutional violation Bonilla is claiming. Reading his arguments in the most generous light, it is possible that he is arguing that there was insufficient evidence to convict him

---

[1] The trial court found that to the extent that the "fraudulent testimony" argument was an attempt to resuscitate a sufficiency of the evidence argument, the Appellate Division had rejected this claim on the merits and that it could not form the basis of Bonilla's 440.10 motion. Alternatively, the trial court found that, if Bonilla was not making a sufficiency of the evidence argument, his 440.10 motion was procedurally barred. People v. Bonilla, Ind. No. 6468/95 (N.Y. Sup. Ct. Dec. 9, 2003), slip op. at 2.

without Ms. Falgoust's testimony, such that his conviction was in violation of <u>Jackson v. Virginia</u>, 440 U.S. 307 (1979). However, the state court ruled on direct appeal that the verdict of guilt was not against the weight of the evidence as "the prosecution adduced overwhelming evidence at trial establishing that the defendant accosted the complainant in the vestibule of her Brooklyn apartment building." <u>People v. Bonilla</u>, 736 N.Y.S.2d 105 (N.Y. App. 2002). When considering the evidence in the light most favorable to the state, drawing all inferences and resolve all issues of credibility in favor of the prosecution, it is clear that "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" even without Ms. Falgoust's testimony. <u>Jackson v. Virginia</u>, 443 U.S. at 318-19, 326. That is, even without Ms. Falgoust's testimony, there was overwhelming evidence of Bonilla's guilt, including the testimony of Ms. Fagan, who testified that she saw Bonilla fleeing down the steps of the victim's building, the testimony of Officer Kafka, who testified that he saw Bonilla running near the scene and that he was spontaneously identified by various people on the scene, the testimony of Detective Borrelli, who testified about Bonilla's admissions that he followed the victim and touched her buttocks, and perhaps most importantly, the testimony of the victim, who identified Bonilla as the man who followed her and sexually abused her.

**B.     The alleged bias of the trial court**

As a second ground for relief, Bonilla claims that the trial court was biased against him, arguing that the trial court repeatedly making rulings in the prosecution's favor and improperly questioned witnesses. Defendant raised this claim in his supplemental appellate brief and the state appellate court rejected the claim as without merit. <u>People v. Bonilla</u>, 736 N.Y.S.2d 105 (N.Y. App. Div. 2002). Bonilla has not shown that this decision was contrary to clearly

7

established federal constitutional law, or that it constituted an unreasonable application of such law.  See 28 U.S.C. § 2254(d).

The power of a federal court "to review the conduct of a state trial court is 'the narrow one of due process and not the broad exercise of supervisory power that we would possess in regard to our own trial court.'"  Garcia v. Warden, 795 F.2d at 7-8 (citing DeChristoforo v. Donnelly, 473 F.2d 1236, 1238 (1st Cir. 1973) (quoted with approval in reversing opinion, Donnelly v. DeChristoforo, 416 U.S. 637, 642 (1974)).  "A state trial judge's conduct would have to be significantly adverse to the defendant before it violated the constitutional requirement of due process and warranted federal intervention."  Id. at 8 (citing Daye v. Attorney Gen. of N.Y., 712 F.2d 1566, 1572 (2d Cir. 1983)).

Here, Bonilla has not demonstrated that the trial court's actions were not significantly adverse to him.  First of all, although the trial court made numerous rulings against the defense, Bonilla does not assert that any of these rulings were legally improper.  Indeed, he admits that each of the rulings was "legal." (Pet. Reply Br. at 4.)  That legally correct rulings were made against the defense does not establish bias on the part of the trial court.

Secondly, although the trial court engaged in questioning of witnesses, "extensive questioning by a trial judge does not necessarily equate with unfairness and the New York appellate courts have demonstrated an obvious ability to determine whether the boundary line between fairness and prejudice has been crossed."  Garcia v. Warden, 795 F.2d at 7.  The Appellate Division determined that Bonilla's claims of improper questioning were without merit, and Bonilla has not demonstrated that this determination constituted an unreasonable application of federal law.

Indeed, the trial court's questioning of witnesses appears to have been proper. Bonilla argues that the trial court asked Ms. Portella to "indicate to us again how the defendant had you pinned against the wall while he was touching you." However, the trial court merely asked Ms. Portella to repeat the motion she had made in response to a question, as the trial court had not observed that motion. Bonilla also argues that the trial court should not have asked him why he changed his name. However, this questioning was relevant to the bail-jumping case, namely why Bonilla gave a different name upon his second arrest than that given on his first arrest.

Finally, Bonilla argues that the trial court improperly intervened in the questioning of Paul Toma, a court clerk for Kings County Supreme Court. Contrary to Bonilla's assertion, the trial court did not limit the testimony of Mr. Toma. Rather, because state court records contained information not pertinent to the bail-jumping case, the trial court ruled that Mr. Toma would be able to testify to certain contents of the records, such as certain dates, but did not admit the records into evidence. The questions asked of Mr. Toma by trial court, namely how much bail was posted and who paid the bail, were relevant to the bail-jumping case and were therefore appropriate to ask.

In short, Bonilla's claims of bias on the part of the trial court are without merit.

### C. Ineffective assistance of counsel claims

In his third ground for relief, Bonilla claims that his trial counsel failed to provide him with constitutionally effective assistance, as his counsel did not challenge the credibility of certain witnesses' statements. Defendant did not raise any argument regarding effective assistance of counsel in his direct appeal. However, he raised this claim in his second 440.10 motion to vacate judgment. The state court determined that this claim was procedurally barred

because defendant did not raise it on direct appeal even though the facts underlying the claim appear on the record. See People v. Bonilla, Ind. No. 6468/95 (July 22, 2004), slip op. at 2. Bonilla does not argue cause and prejudice for his procedural default, nor has he demonstrated that his default would result in a fundamental miscarriage of justice. Accordingly, this claim is barred.

Even if Bonilla's argument were not procedurally barred, it would fail on the merits. In order to prevail on a claim of ineffective assistance counsel, a petitioner must show that his counsel's performance was deficient and that the deficiencies caused actual prejudice to his defense. See Strickland v. Washington, 466 U.S. 668, 687 (1984); see also, e.g., United States v. Cohen, 427 F.3d 164 (2d Cir. 2006). In order to establish deficient performance, a petitioner must overcome a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. In order to establish actual prejudice, a defendant must show that there is a "reasonable probability" that, but for the deficiency, "the result of the proceeding would have been different." Id. at 694.

In the instant case, counsel's overall performance was constitutionally competent. See Kimmelman v. Morrison, 477 U.S. 365, 386 (1986). Bonilla asserts that his counsel failed to challenge the victim's account of the amount of time that elapsed during the crime, the credibility of Ms. Falgoust's statement that she saw the perpetrator in contact with the victim, the credibility of Ms. Fagan's testimony, who stated that she did not see Ms. Falgoust at the scene, and the credibility of Detective Borrelli's testimony with regard to defendant's statements. However, contrary to Bonilla's arguments in his habeas petition, counsel elicited at trial from Ms. Portella an acknowledgment that the incident occurred quickly (Tr. 73-74 (Portella)) and an

10

acknowledgment from Ms. Falgoust that defendant was blocking her view of the victim during the portion of the struggle that she observed (Tr. 98-100 (Falgoust)). Furthermore, trial counsel repeatedly challenged Detective Borrelli concerning the limited extent to which the detective had Bonilla clarify his version of the incident. (Tr. 211-13 (Borelli).) Although trial counsel did not expressly address the credibility of Ms. Fagan's testimony based upon the fact that she did not see Ms. Falgoust at the scene, he vigorously cross-examined Ms. Fagan. In addition, in his opening statement at trial, defense counsel argued that despite having been arrested at the scene and identified as the assailant by a number of witnesses, defendant did not actually assault the victim but merely approached her, and that the observations of the eyewitnesses and victim were unreliable because they were emotionally overwrought. (Tr. at 34-40.) He further argued that the police witnesses were not credible because they were motivated by the desire to make an arrest and that, in particular, defendant's statement to Detective Borrelli was coerced. (Tr. at 36-40.) Finally, at summation, he highlighted the alleged weaknesses of the State's case and reminded the jury of the contentions of the defense. (Tr. 365-83)

Thus, Bonilla has not established that trial counsel's performance was constitutionally incompetent based upon his failure to challenge the credibility of certain witnesses. In addition, given the ample evidence against Bonilla, he has not demonstrated a reasonable probability that, but for the alleged deficiency, the result of the proceeding would have been different.

### D. Failure to charge lesser included offenses claim

In his fourth ground for relief, Bonilla argues that the trial court erred in declining to charge attempted sexual abuse in the first and third degrees as lesser included offenses of sexual abuse in the first degree. Failure to charge a lesser-included offense is not cognizable in a federal

11

habeas corpus proceeding. Although the Supreme Court has held that due process requires a trial court to submit jury instructions on lesser-included offenses in capital cases, it has not yet decided whether due process requires this type of instruction in a non-capital case. See Beck v. Alabama, 447 U.S. 625, 637-38, n.14 (1980). Teague v. Lane, 489 U.S. 288 (1989), bars courts from announcing new rules of constitutional interpretation in habeas corpus cases. Thus, the Second Circuit has specifically declined to extend Beck to non-capital cases on habeas review. Jones v. Hoffman, 86 F.3d 46, 48 (2d Cir. 1996) ("Since a decision interpreting the Constitution to require the submission of instructions on lesser-included offenses in non-capital cases would involve the announcement of a new rule, we hold that Teague precludes our consideration of the issue."); see also, Williams v. Herbert, 435 F. Supp. 2d 199 (W.D.N.Y. 2006) (stating that "the Second Circuit in Jones effectively concluded that a claimed error in failing to include a lesser offense instruction in a non-capital case is not a cognizable claim in a habeas corpus proceeding"); Singleton v. Duncan, 2006 WL 73734 (E.D.N.Y. Jan. 10, 2006). Therefore, this court finds that the trial court's failure to submit the lesser-included charges was not contrary to, nor did it involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d). Accordingly, this claim for habeas corpus relief is denied.

### E. Failure to grant concurrent sentences claim

Finally, in his fifth ground for relief, defendant argues that all three terms of imprisonment for the sexual abuse counts must run concurrently because they occurred as part of a single transaction. The trial court sentenced Bonilla to three consecutive terms of imprisonment for the sexual abuse counts. On appeal, the Appellate Division directed that the terms of imprisonment

12

for the first and second counts run concurrently and expressly rejected the claim that the terms of imprisonment for all three counts run concurrently. People v. Bonilla, 736 N.Y.S.2d at 106-07. Although this argument was raised in his direct appeal, it was raised as a matter of state law, not as a matter of federal constitutional law. That is, Bonilla's appellate brief relied upon N.Y.P.L. § 70.502(2) and various state cases interpreting that provision; Bonilla's brief did not raise the Eighth Amendment of the United States Constitution, nor did he refer to federal constitutional law. (Pet. App. Br. at 23-25.) Because Bonilla did not raise the federal constitutional nature of his claim before the Appellate Division, despite a sufficient record, this claim is technically exhausted but procedurally barred. See Daye v. Attorney Gen. of State of N.Y., 696 F.2d 186, 191 (2d Cir. 1982) (in order to exhaust a claim, a habeas petitioner must alert the state court to the federal constitutional nature of the claim); Harris v. Reed, 489 U.S. 255, 263 n. 9 (1989); Reyes v. Keane, 118 F.3d at 139 (finding that petitioner was "deemed to have exhausted his state remedies for the ineffective assistance claim by his procedural default" because his claims were not raised on direct appeal). Furthermore, Bonilla has not show cause and prejudice, or a fundamental miscarriage of justice which would excuse this defaul. Gray v. Netherland, 518 U.S. at 161-62.

Finally, this argument, even if not procedurally barred, would fail on the merits. Consecutive sentences may be imposed for two offenses where each offense "requires proof of an additional fact which the other does not." Blockburger v. United States, 284 U.S. 299, 304 (1932). The Appellate Division held that the first and second counts of sexual abuse required proof that Bonilla put his hands under her skirt and fondled her vagina and buttocks, but that the third count of sexual abuse required proof that, after a brief interruption, Bonilla fondled her breasts. People v. Bonilla, 736 N.Y.S.2d at 106-07. The Appellate Division reasonably determined that the third

count required an additional fact, namely that after a brief interruption, Bonilla fondled her breasts.  Thus, the Appellate Division's determination that Bonilla must serve consecutive sentences was neither contrary to or an unreasonable application of clearly established Supreme Court precedent nor was it based on an unreasonable determination of the facts of the case.  See 28 U.S.C. § 2254(d).

## **CONCLUSION**

For the reasons set forth herein, the petition is denied. Further, a certificate of appealability will not be issued because Bonilla has not made a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2). The Clerk of the Court is instructed enter judgment in accordance with this Order and to close the case.

SO ORDERED

Dated: Brooklyn, New York
December 29, 2006

Carol Bagley Amon
United States District Judge